1
2
3
4
5
6
7
8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   DERRICK K. COURTNEY,                          No.  2:18-CV-2052-KJM-DMC-P

12                    Plaintiff,

13        v.                                       FINDINGS AND RECOMMENDATIONS

14   POOJA KANDEL, et al.,

15                    Defendants.

16

17            Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18   42 U.S.C. § 1983.   Pending before the Court are Defendants' motion for summary judgement

19   (ECF No. 43); Plaintiff's opposition (ECF No. 45); and Defendants' reply (ECF No. 46).

20

21                    **I. PLAINTIFF'S ALLEGATIONS**

22            Plaintiff, Derrick Courtney, originally named the following as Defendants: 1)

23   Shadi Boutros; 2) Dandra Roajof Moore; 3) Pooja Kandel; and 4) Khin Win.  See ECF No. 1, pg.

24   2.  Boutros and Moore were dismissed.  See ECF Nos. 30, 35.  Plaintiff alleges that, on

25   November 23, 2017, Defendants Kandel and Win evaluated an injury to Plaintiff's jaw.  See ECF

26   No. 1, pg. 4.  Plaintiff states that, during that examination, his jaw was swollen and continued to

27   swell.  See id.  Plaintiff states that the swelling indicated something was wrong and that he

28   needed urgent medical attention.  See id.  Plaintiff claims that Defendants sent him back to his

1   housing area without treating him for a fractured mandible for a four-day period.  See id.  Plaintiff

2   further claims that Defendants failed to give him medication. Id. Consequently, he suffered pain

3   that prevented him from sleeping, eating, and talking over that four-day period, and that the delay

4   in medical attention caused his jaw to heal incorrectly.  See id.

5

6   **II. PROCEDURAL HISTORY**

7   On July 27, 2018, Plaintiff filed a prisoner civil rights complaint against Kandel,

8   Win, Boutros, and Moore, alleging that their conduct violated his Eighth Amendment right to

9   freedom from cruel and unusual punishment.  See ECF No. 1.  After a protracted procedural

10  history, the Court dismissed Boutros and Moore, who Plaintiff named in the original complaint,

11  as defendants. See ECF Nos. 30, 35; see also ECF No. 14, 25. The Court also denied the

12  remaining defendants' motion to dismiss. See ECF No. 35. The remaining defendants, Kandel

13  and Win, filed an answer and, subsequently, a motion for summary judgment. ECF Nos. 36, 43.

14  Plaintiff filed an opposition to the motion for summary judgment. ECF No. 45. Defendants

15  Kandel and Win filed a reply to Plaintiff's opposition. ECF No. 46.

16

17  **III. STANDARD FOR SUMMARY JUDGEMENT**

18  The Federal Rules of Civil Procedure (FRCP) provide for summary judgment or

19  summary adjudication when "the pleadings, depositions, answers to interrogatories, and

20  admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

21  material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ.

22  P. 56(a).  The standard for summary judgment and summary adjudication is the same.  See Fed.

23  R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal.

24  1998).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or

25  defenses.  See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment

26  practice, the moving party

27  . . . always bears the initial responsibility of informing the district court of
    the basis for its motion, and identifying those portions of "the pleadings,
    depositions, answers to interrogatories, and admissions on file, together

28

2

with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

3

1   Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

2   1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the

3   judge, not whether there is literally no evidence, but whether there is any upon which a jury could

4   properly proceed to find a verdict for the party producing it, upon whom the onus of proof is

5   imposed." Anderson, 477 U.S. at 251.

6

7                              **IV. THE PARTIES' EVIDENCE**

8          A.     **Defendants' Evidence**

9                 Defendants' motion for summary judgment is supported by the following sworn

10  declarations: 1) Arthur B. Mark III (ECF No. 43-3, pgs. 1-2); 2) P. Kandel (ECF No. 43-4); and

11  3) Dr. K. Win (ECF No. 43-5).  Defendants further relied on excerpts from the deposition of

12  Plaintiff, Mr. Derrick Courtney (ECF No. 43-3, Ex. A, pgs. 4-38), as well as documents Plaintiff

13  provided relating to the deposition (ECF No. 43-3, Ex. 2 and 3, pgs. 42-49). Defendants also

14  submit a Statement of Undisputed Facts discussed below in section (IV)(C).

15         B.     **Plaintiff's Evidence**

16                In support of his opposition, Plaintiff relies on Defendant Win's responses to

17  Plaintiff's request for admissions (ECF No. 45, pgs. 94-98), Defendant Win's responses to

18  Plaintiff's interrogatories (ECF No. 45, pgs. 108-113), as well as the following exhibits:

19                 Exhibit 1              California Correctional Health Care Services,
20                                        Volume 4: Medical Services Chapter 1.3 § 4.1.3
                                          Scheduling and Access to Care Procedure.  ECF
21                                        No. 45, pgs. 28-39 (labelled Exhibit HCS 1-12).

22                 Exhibit 2              Excerpt of assorted medical records of Plaintiff
                                          from California State Prison, Solano. Id. at 40-46
23                                        (labelled Exhibit 1-7).

24                 Exhibit 3              Duty statement for registered nurses at correctional
25                                        facilities. Id. at 56-58 (labelled Exhibit RNCF and
                                          Exhibit RNCF 1-2).
26  ///

27  ///

28  ///

                                               4

C.     **Defendant's Statement of Undisputed Facts and Plaintiff's Response**

The following are: 1) Defendants' Statement of Undisputed Facts, ECF No. 43-2; and 2) Plaintiff's responses, ECF No. 45, pgs. 9-18.

| Defendants' Statement | Plaintiff's Response |
|---|---|
| 1.  Plaintiff, Derrick K. Courtney (CDCR No. F 03171), is an inmate of the California Department of Corrections and Rehabilitation (CDCR), serving a sentence of life without the possibility of parole.<br><br>(Pl's Dep. at 5:7-13; 8:3-23 (Exhibit A to the Declaration of Arthur B. Mark III in Support of Defendants' Motion for Summary Judgment (Mark Decl.)); Pl's Compl., ECF No. 1.) | 1.  Admit[1]. |
| 2.  In November 2017, Plaintiff was an inmate at California State Prison-Solano (CSP-Solano).<br><br>(Pl's Compl. ECF No. 1 at 1-2; Pl's Dep. at 14:9-15 (Mark Decl. Ex. A).) | 2.  Admit. |
| 3.  Plaintiff has no medical training or experience.<br><br>(Pl's Dep. at 10:2-20 (Mark Decl. Ex. A).) | 3.  Deny.  Plaintiff has common sense that medical care should be provided to fix broken bones.<br><br>(page 9 of Plaintiff's Opposition to Defendants' Motion for Summary Judgement) |
| 4.  Dr. Win worked as physician for forty years; he worked for CDCR as a physician from 2003 to 2018, and at CSP-Solano from August 2008 until he retired in December 2018.<br><br>(Declaration of K. Win in Support of Defs' Motion for Summary Judgment (Win Decl.), ¶ 1-4.) | 4.  Deny.  Dr. Win comes from Yangon (Rangoon), Myanmar, and Plaintiff contends that the country's medical records may be incomplete or untrue.  Plaintiff contests Dr. Win's forty years of experience.<br><br>(page 10 of Plaintiff's Opposition to Defendants' Motion for Summary Judgement) |

---

[1] While Plaintiff uses the phrase, "EXCEPTION to Defendants UNDISPUTED MATERIAL FACT" for several of the responses, underneath these sections Plaintiff directly copies the Defendants' undisputed material fact for the corresponding number and provides no contention or dispute.  It appears that these sections are meant to be admissions or acceptances of the undisputed fact.

| | |
|---|---|
| 5.  Nurse Kandel has been a registered nurse for eleven years and has worked at CSP-Solano since July 2015.<br><br>(Declaration of P. Kandel in Support of Defs' Motion for Summary Judgment (Kandel Decl.) ¶ 1-3.) | 5.  Deny.  Nurse Kandel comes from Nepal, and Plaintiff contends that that country's medical records may be incomplete or untrue. Plaintiff contests Nurse Kandel's eleven years of experience.<br><br>(page 10 of Plaintiff's Opposition to Defendants' Motion for Summary Judgement) |
| 6.  Plaintiff is suing Defendants Win and Kandel for inadequate medical treatment on November 23, 2017.<br><br>(Pl's Dep. at 13:21-14:2; 33:15-34:4 (Mark Decl. Ex. A); Pl's Compl. ECF No. 1.) | 6.  Deny.  Plaintiff is suing for intentionally denying or delaying access to medical care and that his injuries required immediate medical care, and Defendant's Win and Kandel failed to take reasonable action to summon such medical care.<br><br>(page 10 of Plaintiff's Opposition to Defendants' Motion for Summary Judgement) |
| 7.  November 23, 2017 was Thanksgiving Day, a state holiday; the following day was also a state holiday, and November 25-26, 2017 was the weekend.<br><br>(Kandel Decl. ¶ 3; Win Decl. ¶ 5, 8.) | 7.  Deny.  On non-business days triage and treatment area (TTA) registered nurses are to determine if a patient requires urgent care and are to take action to coordinate that care. Patients with urgent medical symptoms are to be scheduled same day appointments with the primary registered nurse and other individuals as symptoms indicate.<br><br>(page 10-11 of Plaintiff's Opposition to Defendants' Motion for Summary Judgement; Pl's Ex. 1, pg. 5) |
| 8.  Because it was a holiday, no physician was on-site at CSP-Solano on November 23, 2017; Dr. Win was on-call, available by telephone.<br><br>(Kandel Decl. 3; Win. Decl. ¶ 5.) | 8.  Deny.  Institutions are to use open access slots to ensure patients are seen in an efficient manner, in a clinically appropriate setting and within all mandated timeframes.<br><br>(page 11 of Plaintiff's Opposition to Defendants' Motion for Summary Judgement; Pl's Ex. 1, pg. 9) |
| 9.  Nurse Kandel was working at CSP-Solano on November 23, 2017 in the triage and treatment area (TTA).  If a patient was brought to the TTA, Nurse Kandel would assess the patient's complaint and symptoms, including taking vital signs and conducting a visual | 9.  Deny.  Plaintiff's systolic blood pressure was high and should have required Nurse Kandel to perform some form of procedure to reduce his blood pressure or send Plaintiff to an outside hospital on November 23, 2017. |

| | |
|---|---|
| examination.  She would then contact the on-call physician on the telephone and report what she found and take orders from the physician as to the plan and treatment for the inmate patient.<br><br>(Kandel Decl. ¶ 3; Win Decl. ¶ 5.) | (page 11 of Plaintiff's Opposition to Defendants' Motion for Summary Judgement; Pl's Ex. 2, pg. 7) |
| 10.  Under her scope of practice, Nurse Kandel could not make diagnoses or give orders for treatment including, but not limited to, medications or x-rays, or send an inmate to an emergency room outside the prison.<br><br>(Kandel Decl. ¶ 4.) | 10.  Deny.  Nurse Kandel failed to properly assess the emergency severity index and ensure an appropriate clinical handoff to Dr. Win.<br><br>(page 11-12 of Plaintiff's Opposition to Defendants' Motion for Summary Judgement; Pl's Ex. 3; and Pl's Ex. 2, pgs. 1-7) |
| 11.  Plaintiff got in a fight on the yard with another inmate on November 23, 2017 at about 8:00 p.m.<br><br>(Pl's Dep. 14:18-15:17; 16:24-17:1; 20:15-21:22, Dep. Ex. 3 (Mark Decl. Ex. A).) | 11.  Admit. |
| 12.  Plaintiff claims the other inmate hit him in the right side of his jaw; he was not bleeding and he did not lose consciousness.<br><br>(Pl's Dep. at 16:4-23 (Mark Decl. Ex A); Kandel Decl. ¶ 9-11.) | 12.  Admit. |
| 13.  Plaintiff was taken to the TTA at CSP-Solano shortly after the fight.<br><br>(Pl's Dep. 22:3-24 (Mark Decl. Ex. A); Kandel Decl. ¶ 5-6.) | 13.  Admit. |
| 14.  Plaintiff walked to the TTA without assistance.<br><br>(Kandel Decl. ¶ 6; Pl's Dep. at 22:9-10 (Mark Decl. Ex. A).) | 14.  Admit. |
| 15.  Nurse Kandel assessed Plaintiff's condition using the Emergency Severity Index, which is a tool used by nurses to assess a patient's condition based on their physical | 15.  Admit. |

| | |
|---|---|
| presentation to determine what level of care the patient requires.<br><br>(Kandel Decl. ¶ 6, Ex. A.) | |
| 16.  During the visit, Plaintiff could talk, did not appear to have trouble breathing, and had normal vital signs; he could breathe and swallow.  He asked Nurse Kandel questions and understood what she was saying to him.<br><br>(Kandel Decl. ¶ 6, Ex. A; Pl's Dep. at 22:25-23:5; 24:5-18 (Mark Decl. Ex. A.)) | 16.  Deny.  Plaintiff had difficulty talking due to swelling of his jaw and had high systolic and diastolic blood pressure.  Plaintiff did not understand what Nurse Kandel was saying, that if the pain was reduced he would not be sent to an outside hospital.<br><br>(page 12-13 of Plaintiff's Opposition to Defendants' Motion for Summary Judgement) |
| 17.  Plaintiff complained about loose teeth to Nurse Kandel, but he did not lose any teeth as a result of the fight.<br><br>(Pl's Dep. 23:6-21 (Mark Decl. Ex. A.)) | 17.  Admit. |
| 18.  Plaintiff did not appear to Nurse Kandel to require immediate life-saving treatment; he was not confused, lethargic, disoriented and did not appear to be in severe pain or distress.<br><br>(Kandel Decl. ¶ 7, Ex. A; Pl's Dep. 16:9-23; 22:25-23:5; 24:5-18 (Mark Decl. Ex. A.)) | 18.  Deny.  Nurse Kandel mitigated the pain section of the vital signs so as to not provide Dr. Win with adequate information that showed Plaintiff required treatment from an outside hospital.  Plaintiff was suffering from adjustment disorder and had an x-ray ordered for the swelling of his jaw.<br><br>(page 13 of Plaintiff's Opposition to Defendants' Motion for Summary Judgement; Pl's Ex. 2, pgs. 4, 7.) |
| 19.  Plaintiff indicated a pain level of 6 out 10, which is not considered severe.<br><br>(Kandel Decl. ¶ 8, Ex. A.) | 19.  Deny.  Nurse Kandel admitted less pain than Plaintiff actually had, so as to prevent Dr. Win from considering sending Plaintiff to a hospital.<br><br>(page 13 of Plaintiff's Opposition to Defendants' Motion for Summary Judgement) |
| 20.  Nurse Kandel visually examined Plaintiff and noted some swelling of his left jaw and the only other injury she observed was a 1 cm laceration under his left eye, which was not | 20.  Deny.  Nurse Kandel noted that Plaintiff was suffering from adjustment disorder.  Because no doctor was present, Nurse Kandel assumed the role of a doctor by providing a diagnosis and prognosis. |

| | |
|---|---|
| actively bleeding, and only required a Band-Aid (sterile strips) for closure and not sutures.<br><br>(Kandel Decl. ¶ 9-10, Ex. A. <u>See</u> Pl's Dep. at 16:4-23 (Mark Decl. Ex. A).) | (page 13-14 of Plaintiff's Opposition to Defendants' Motion for Summary Judgement; Pl's Ex. 2, pg. 7) |
| 21.   At Dr. Win's direction, Nurse Kandel performed a test on Plaintiff by having him hold a wooden tongue blade (tongue depressor) between his teeth.<br><br>(Kandel Decl. ¶ 9; Win Decl. ¶ 7.) | 21.   Deny.  Nurse Kandel does not have the six years of medical education and two years of hospital internship experience of a doctor, and has no dental training, and could not give an adequate assessment.  Nurse Kandel did not want to give an adequate assessment as an adequate assessment would require outside hospitalization.<br><br>(page 14 of Plaintiff's Opposition to Defendants' Motion for Summary Judgement) |
| 22.   Plaintiff was able to hold the tongue blade firmly when Nurse Kandel twisted it; an indicator that a fracture may not have been present.<br><br>(Kandel Decl. ¶ 9; Win Decl. ¶ 7, Ex. A.) | 22.   Deny.  Plaintiff could not open his mouth all the way.  Plaintiff had high systolic and diastolic blood pressure.<br><br>(page 14 of Plaintiff's Opposition to Defendants' Motion for Summary Judgement; Pl's Ex. 2, pg. 7.) |
| 23.   Nurse Kandel did not see any loose teeth or bleeding from Courtney's mouth.  Her examination of all his other bodily systems revealed that they were within normal limits and she observed no cardiac or breathing distress, loss of consciousness or anything else indicating that Plaintiff might need to go to an emergency room.<br><br>(Kandel Decl. ¶ 11, Ex. A. See Pl's Dep. at 16:4-23; 22:11-23:5 (Mark Decl. Ex. A).) | 23.   Deny. Plaintiff could not open his mouth all the way.  Plaintiff had high systolic and diastolic blood pressure.<br><br>(page 14 of Plaintiff's Opposition to Defendants' Motion for Summary Judgement; Pl's Ex. 2, pg. 7.) |
| 24.   Nurse Kandel relayed her findings regarding Plaintiff to Dr. Win via telephone.<br><br>(Kandel Decl. ¶ 12; Win Decl. ¶ 6.) | 24.   Admit. |
| 25.   Dr. Win did not speak with or see Plaintiff on November 23, 2017.  Per CDCR protocols, he relied on the information relayed to him by Nurse Kandel to develop his assessment and plan. | 25.   Deny.  Dr. Win did not follow protocols.<br><br>(page 15 of Plaintiff's Opposition to Defendants' Motion for Summary Judgement; |

| | |
|---|---|
| (Win Decl ¶ 6.) | Admissions 5 and 6; Interrogatories 5, 6, and 7.) |
| 26.  Nurse Kandel advised Dr. Win that Plaintiff had been involved in a physical altercation; had sustained a 1 cm laceration under his left eye and had a swollen left jaw, but that he denied any other injury, loss of consciousness, blurry vision or loose teeth.<br><br>(Win Decl. ¶ 7, Ex. A.) | 26.  Deny.  Plaintiff contends this is not a true account of the conversation between Nurse Kandel and Dr. Win and that the phone call recording was recorded.<br><br>(page 15 of Plaintiff's Opposition to Defendants' Motion for Summary Judgement) |
| 27. Dr. Win concurred with Nurse Kandel's assessment that no suture was needed and that a sterile-strip (band-aid) for the laceration was sufficient.<br><br>(Win Decl. ¶ 7, Ex. A.) | 27. Admit. |
| 28. Based on Nurse Kandel's description of Plaintiff's presentation and the tongue blade test, Dr. Win did not suspect he had a broken jaw or fracture.  His symptoms were mild, with no loss of consciousness or other injuries or indicators for emergency treatment.  Accordingly, nothing Nurse Kandel relayed indicated that Plaintiff needed emergency treatment or an x-ray on an emergency basis.  However, because a fracture cannot be ruled out without an x-ray, Dr Win ordered an x-ray for Plaintiff the next business day (November 27, 2017).<br><br>(Win Decl. ¶ 7-8, Ex. A-B.) | 28. Deny.  Plaintiff was not able to open his mouth completely.  A broken jaw requires adequate alignment and would require treatment. Dr. Win did not ask for an adequately precise examination of Plaintiff's jaw.<br><br>(page 15-16 of Plaintiff's Opposition to Defendants' Motion for Summary Judgement) |
| 29. Based on Dr. Win's medical training and experience and the information relayed concerning Plaintiff's condition, Dr. Win did not believe Plaintiff was an emergency case requiring transport outside the prison to an emergency room.<br><br>(Win Decl. ¶ 8.) | 29. Deny.  Plaintiff was in debilitating pain due to a dental related condition.<br><br>(page 16 of Plaintiff's Opposition to Defendants' Motion for Summary Judgement; Admission 5.) |
| | |

| | |
|---|---|
| 30. In addition to the x-ray, Dr. Win ordered ibuprofen for pain relief and a follow-up with Plaintiff's primary care doctor and nurse.<br><br>(Win Decl. ¶ 8, Ex. B; Kandel Decl. ¶ 12, Ex. B.) | 30. Admit. |
| 31. Nurse Kandel also provided ice for Plaintiff's swollen jaw.<br><br>(Kandel Decl. ¶ 12; Win Decl. Ex. A.) | 31. Admit. |
| 32. Plaintiff was ambulatory at the end of the visit with Nurse Kandel and she advised him before he left that if he experienced any increase in pain or other symptoms or felt he needed medical attention he should seek medical treatment by going "man down."<br><br>(Kandel Decl. ¶ 13; Win Decl. ¶ 9; Pl's Dep. 27:9-18 (Mark Decl. Ex. A).) | 32. Admit. |
| 33. Plaintiff did not return to the TTA on November 23, 2017.<br><br>(Kandel Decl. ¶ 13; Win Decl. ¶ 9; Pl's Dep. 27:9-18 (Mark Decl. Ex. A).) | 33. Admit |
| 34. Plaintiff never complained to his dorm mates about his jaw between November 23 and November 27, 2017 and he has no records showing that he sought medical treatment after his encounter with Nurse Kandel on November 23, 2017.<br><br>(Pl's Dep. 28:1-31:7; 45:5-49:16, Dep. Exs. 1, 2 (Mark Decl. Ex A); Mark Decl ¶ Ex. B.) | 34. Admit. |
| 35. In 2017, there was x-ray equipment at CSP-Solano, but the technicians that operate it do not work on state holidays or weekends. Thus, there were no x-ray services available at CSP-Solano when Courtney was brought to medical on November 23, 2017.<br><br>(Kandel Decl. ¶ 14; Win Decl. ¶ 8.) | 35. Deny.  On non-business days the TTA RN shall determine if a patient requires urgent or routine care and coordinate care of patients with emergency or urgent conditions.  The TTA RN will immediately refer urgent dental needs to appropriate clinicians for evaluations consistent with established program guidelines. |

11

| | |
|---|---|
| | (page 17 of Plaintiff's Opposition to Defendants' Motion for Summary Judgement; Pl's Ex. 1, pgs. 5, 8.) |
| 36. Plaintiff had his x-ray on November 27, 2017 as ordered by Dr. Win, which revealed a fracture in the left mandible. Plaintiff was sent out for treatment and had surgery on November 29, 2017.<br><br>(Win Decl. ¶ 10, Ex. C.; Pl's Dep. at 34:14-19 (Mark Decl. Ex. A).) | 36. Admit. |
| 37. Plaintiff also saw a dentist at the prison on November 27, 2017.<br><br>(Pl's Dep. at 34:10-11 (Mark Decl. Ex. A).) | 37. Admit. |
| 38. Plaintiff's records reveal that by January 23, 2018, his fractures appeared to have healed uneventfully and without any complication.<br><br>(Win Decl. ¶ 10, Ex. C; Pl's Dep. 36:4-10; 44:7-11 (Mark Decl. Ex. A).) | 38. Admit. |
| 39. The reference to "adjustment disorder" in Plaintiff's medical records refers to a mental health condition, and not to any physical deformity of Plaintiff's jaw.<br><br>(Kandel Decl. ¶ 15; see Pl's Dep. at 18:3-19:2; Dep. Ex. 2 (Mark Decl. Ex. A).) | 39. Deny.  The assertion that medical record that states adjustment disorder refers to anything other than the reason for Plaintiff's visit is false.<br><br>(page 17-18 of Plaintiff's Opposition to Defendants' Motion for Summary Judgement; Pl's Ex. 2, pg. 7.) |
| 40. Plaintiff could not describe either defendant and incorrectly identified Dr. Win as a female, when in fact he is a man, and as young when, in fact, he was 64 years old in 2017.<br><br>(Pl's Dep. at 13:2-20; 43:2-11 (Mark Decl. Ex A); Win Decl. ¶ 1.) | 40. Deny.  Plaintiff admitted that he was confused and corrected his error, stating that he could not describe Dr. Win.<br><br>(page 18 of Plaintiff's Opposition to Defendants' Motion for Summary Judgement; Pl's Dep. at 13:10-20.) |

///

///

///

**V. DISUCSSION**

In their motion for summary judgment, Defendants argue: (1) Plaintiff presents no genuine dispute of material fact that would support that Defendant Kandel or Defendant Win were deliberately indifferent to Plaintiff's medical needs; and (2) Defendants are entitled to qualified immunity. The Court agrees on both points.

### A.      Deliberate Indifference to Medical Needs

Defendants argue that undisputed evidence shows that neither Defendant was deliberately indifferent to Plaintiff's medical needs. The Court agrees and concludes that Kandel and Win are entitled to judgment as a matter of law.

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.   See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind."  See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982), abrogated on other grounds by Sandin v. Conner, 515 U.S. 472 (1995).  An injury or illness is sufficiently serious if the failure to

13

treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).  Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain.  See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns.  See McGuckin, 974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989).  The complete denial of medical attention may constitute deliberate indifference.  See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference.  See Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim.  See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Undisputed facts show that November 23, 2017 was Thanksgiving, and because of the holiday, no physician was present at the prison.  See ECF No. 43-2, pg. 2.  On November 23, 2017, Plaintiff was injured in an altercation with another inmate around 8:00 p.m.  See id. at 3.  After the fight, Plaintiff went to the triage and treatment area to receive assistance.  See id.  Plaintiff claimed he was hit on the right side of his jaw.  See id.  Plaintiff was not bleeding, and

14

1    he did not lose consciousness.  See id. at 4.  Plaintiff walked to the triage and treatment area

2    without assistance.  See id. at 3.  Defendant Kandel was the registered nurse present at the triage

3    and treatment area and Defendant Win was the physician on-call on November 23, 2017.  See id.

4         1.    Defendant Kandel

5            Defendants present undisputed facts that show that Defendant Kandel was not

6    deliberately indifferent to Plaintiff's medical needs.  See, e.g., Edmo v. Corizon, Inc., 935 F.3d

7    757, 786 (9th Cir. 2019); Colwell v. Bannister, 763 F.3d 1060, 1066–68 (9th Cir. 2014).  When

8    Plaintiff arrived at the triage and treatment area, Defendant Kandel examined him; her exam did

9    not indicate that Plaintiff required immediate, lifesaving treatment.  See ECF No. 43-2, pg. 4.

10   Plaintiff was able to talk, did not appear to have trouble breathing, was able to breath and

11   swallow, and had normal vital signs.  See id.  Kandel contacted the on-call physician, Defendant

12   Win, and at his instruction, performed a test with a tongue blade to determine whether Plaintiff's

13   jaw was broken; the test indicated that there might not have been a fracture in Plaintiff's jaw.  See

14   id. at 5.  Plaintiff's bodily symptoms were within normal limits, and nothing indicated to Kandel

15   that Plaintiff needed to go to an emergency room.  See id.  Kandel described the results of her

16   examinations to Win.  See id.  Kandel provided ice to the Plaintiff for the swelling of his jaw.

17   See id. at 7.  Because Kandel is a registered nurse, she could not order x-rays, prescribe

18   medication, or order for to be sent Plaintiff to an emergency room.  See id. at 3.  After Win gave

19   his instructions for Plaintiff's care, Plaintiff was able to walk and Kandel advised him that if his

20   pain increased, or other symptoms occurred, or if Plaintiff felt he needed medical attention he

21   should seek medical treatment.  See id. at 7.  Plaintiff did not return to the triage and treatment

22   area on November 23, 2017 and did not seek medical assistance of any kind between November

23   23, 2017, and November 27, 2017, when his jaw was x-rayed per Defendant Win's order.  See id.

24   Plaintiff did not complain of any pain or discomfort in his jaw to his dorm mates.  See id.

25   Plaintiff's jaw x-ray did show a fracture, which Plaintiff had surgery for on November 29, 2017.

26   See id. at 7-8.  Plaintiff's fractures healed without complication.  See id. at 8.

27            Although Plaintiff does deny some of the facts presented by Defendants related to

28   Defendant Kandel, he fails to raise any instance of disputed material fact.  Plaintiff contends that

15

because his systolic and diastolic blood pressure results were high, he should have been sent to the emergency room, but Plaintiff provides no evidence to support the assertion that those high blood pressure results would require emergency treatment. <u>See</u> ECF No. 45, pgs. 12-14. Even if it were the case that Plaintiff should have been sent to the emergency room, Kandel did not have the ability to order that Plaintiff go to the emergency room. <u>See</u> ECF No. 43-2, pg. 3. Moreover, Plaintiff's complaint does not indicate any injury related to his blood pressure, only the injury related to his fractured jaw. <u>See</u> ECF No. 1, pg. 4.

Plaintiff also contends Kandel knew he needed treatment at an outside facility based on a notation in his medical records that mentioned Plaintiff had an adjustment disorder. <u>See</u> ECF No. 45, pgs. 13-14. Defendants, relying on Kandel's sworn declaration, state that Plaintiff's adjustment disorder refers to a mental health condition and does not relate to Plaintiff's jaw. <u>See</u> ECF No. 43-2, pg. 8; <u>see</u> ECF No. 43-4, pg. 4. Plaintiff denies this and argues that his adjustment disorder was a reason for his visit; he does not, however, provide any evidence to support his assertion that his adjustment disorder had anything to do with the condition of his jaw. <u>See</u> ECF No. 45, pg. 18. Even if there was evidence supporting Plaintiff's contention that the notation of his adjustment disorder related to his jaw, Plaintiff provides no evidence that such an issue would require immediate medical treatment rather than the x-ray that he was scheduled for.

Defendants have shown that Defendant Kandel was not indifferent to Plaintiff's medical needs. <u>See, e.g.</u>, <u>Edmo</u>, 935 F.3d at 786; <u>Colwell</u>, 763 F.3d at 1066–68. When Plaintiff went to the triage and treatment area, Kandel evaluated him, provided him with ice for his swelling, and contacted the on-call physician. The contentions that Plaintiff raises appear at most to be differences of opinion and are otherwise assertions unsupported by any evidence. There is no factual indication that Kandel's actions were medically unacceptable under the circumstances or that Kandel was aware of and ignored Plaintiff's broken jaw. <u>See, e.g.</u>, <u>Edmo</u>, 935 F.3d at 786; <u>Colwell</u>, 763 F.3d at 1066–68. Defendants have met their burden and shown that there is no genuine issue of material fact and that Defendant Kandel is entitled to summary judgement as a matter of law. Plaintiff has not shown that there is a genuine dispute of material fact. As such, the Court finds Defendants' motion for summary judgement should be granted as to Kandel.

1            2.      <u>Defendant Win</u>

2            Defendants have similarly provided undisputed facts showing that Defendant Win

3 was not deliberately indifferent to Plaintiff's medical needs.  Defendant Win was the on-call

4 physician on November 23, 2017 and was not present at the prison facilities due to the holiday.

5 <u>See</u> ECF No. 43-2, pg. 2.  Kandel contacted Win and told him that Plaintiff had been in a physical

6 altercation, that Plaintiff had not lost consciousness, did not have blurry vision, had a laceration

7 under his left eye, and had a swollen jaw.  <u>See</u> <u>id.</u> at 5.  Win instructed Kandel to perform a test

8 with a tongue blade, which indicated that Plaintiff's jaw might not have been broken.  <u>See</u> <u>id.</u>

9 Win, based on his medical training and the information he received from Kandel, did not believe

10 that Plaintiff's injury required him to be transported to the emergency room.  <u>See</u> <u>id.</u> at 6.  Win

11 ordered that Plaintiff's jaw be x-rayed on the next business day, November 27, 2017, and ordered

12 ibuprofen for pain relief.  <u>See</u> <u>id.</u> at 6-7.  As stated above, Plaintiff's jaw x-ray revealed a fracture,

13 for which Plaintiff had surgery, and which has healed without complication.  <u>See</u> <u>id.</u> at 7-8.

14            Plaintiff denies several of the facts presented by the Defendants relating to Win,

15 but Plaintiff fails to raise a dispute of material fact.  Plaintiff denies Defendants' statement that no

16 physician was on site at the prison due to the holiday and that Win was available by phone. <u>See</u>

17 ECF No. 45, pg. 11. Plaintiff states that institutions are meant to ensure patients are seen in an

18 efficient manner, in clinically appropriate settings.  <u>See</u> <u>id.</u>  In support of his assertion, Plaintiff

19 references health care services policy documents.  <u>See</u> <u>id.</u> at 11, 36.  Defendants correctly point

20 out that these exhibits, which were not produced or identified by Plaintiff during discovery,

21 should not be considered by the Court.  <u>See</u> ECF No. 46 pgs. 2-3.  However, even if these

22 documents had been properly presented during discovery, their contents do not provide a genuine

23 dispute of material fact.  The documents show guidelines about open access slots and procedures

24 to follow for non-business days, and they do not contradict Defendants' factual statements.

25            Plaintiff also denies Defendants' statement that, at Win's direction, Kandel

26 performed a test using a tongue blade.  Plaintiff asserts that as a nurse Kandel lacks the training of

27 a doctor and could not give an adequate assessment to Win.  <u>See</u> ECF No. 45 at 14.  Plaintiff

28 provides no evidence to support his contention that Kandel was unable to perform the test.

17

1    Plaintiff also denies the result of the tongue blade test indicating that he might not have a fracture.

2    See id.  In that denial, Plaintiff states that he could not open his mouth all the way and that he had

3    high systolic and diastolic blood pressure.  See id.  Neither of Plaintiff's assertions contradict

4    Defendants' statements that Win directed Kandel to perform a tongue blade test that indicated

5    Plaintiff's jaw may not have been fractured.  Plaintiff's assertions accordingly do not create a

6    genuine issue of material fact.

7            Plaintiff further denies that Kandel told Win that Plaintiff had been in a physical

8    altercation and that he had a laceration and a swollen jaw, but that he had not lost consciousness

9    and did not have blurry vision.  See ECF No. 45, pg. 15.  Plaintiff asserts that this call was

10   recorded and that the recording would establish inaccuracy in Defendants' recounting, however

11   Plaintiff does not reference any evidence to support these claims.  See id.  Plaintiff does not

12   identify which part of the stated fact is inaccurate or how it is inaccurate.  Plaintiff's vague

13   allegations of falsity, lacking any evidence, do not show that there is a dispute of material fact.

14           Defendant Win was not deliberately indifferent to Plaintiff's medical needs.  See,

15   e.g., Edmo, 935 F.3d at 786; Colwell, 763 F.3d at 1066–68.  When contacted, Win received

16   information from Kandel and instructed her to perform a test to gather more information.  Based

17   on his medical experience and the information available to him, Win determined that Plaintiff's

18   condition did not require immediate treatment, ordered an x-ray to be done the next business day,

19   and ordered ibuprofen to assist in Plaintiff's pain management.  There is no factual indication that

20   any of Win's actions were medically unacceptable under the circumstances or that Win was

21   aware of and ignored Plaintiff's broken jaw. See, e.g., Edmo, 935 F.3d at 786; Colwell, 763 F.3d

22   at 1066–68.  Defendants have met their burden and shown that there is no genuine issue of

23   material fact and that Defendant Win is entitled to summary judgement as a matter of law.

24   Plaintiff has not shown that there is a genuine dispute of material fact.  The Court thus finds that

25   Defendants' motion for summary judgement should be granted for Defendant Win.

26           **B.**    **Qualified Immunity**

27           The Court finds that Plaintiff has failed to establish a genuine issue of material fact

28   showing deliberate indifference to his medical needs. However, in the event the District Judge

18

1  finds a genuine issue in Plaintiff's claims, the undersigned provides the following analysis.

2          Government officials enjoy qualified immunity from civil damages unless their

3  conduct violates "clearly established statutory or constitutional rights of which a reasonable

4  person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In general,

5  qualified immunity protects "all but the plainly incompetent or those who knowingly violate the

6  law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  In ruling upon the issue of qualified

7  immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the

8  injury, the facts alleged show the defendant's conduct violated a constitutional right.  See Saucier

9  v. Katz, 533 U.S. 194, 201 (2001).  If a violation can be made out, the next step is to ask whether

10  the right was clearly established.  See id.  This inquiry "must be undertaken in light of the specific

11  context of the case, not as a broad general proposition . . . ."  Id.  "[T]he right the official is

12  alleged to have violated must have been 'clearly established' in a more particularized, and hence

13  more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable

14  official would understand that what he is doing violates that right."  Id. at 202 (citation omitted).

15  Thus, the final step in the analysis is to determine whether a reasonable officer in similar

16  circumstances would have thought his conduct violated the alleged right.  See id. at 205.

17          When identifying the right allegedly violated, the court must define the right more

18  narrowly than the constitutional provision guaranteeing the right, but more broadly than the

19  factual circumstances surrounding the violation.  See Kelly v. Borg, 60 F.3d 664, 667 (9th Cir.

20  1995).  For a right to be clearly established, "[t]he contours of the right must be sufficiently clear

21  that a reasonable official would understand [that] what [the official] is doing violates the right."

22  See Anderson v. Creighton, 483 U.S. 635, 640 (1987).  Typically, once the court concludes a

23  right was clearly established, an officer is not entitled to qualified immunity because a reasonably

24  competent official is charged with knowing the law governing his conduct.  See Harlow v.

25  Fitzgerald, 457 U.S. 800, 818-19 (1982).  However, even if a plaintiff has alleged a violation of a

26  clearly established right, the government official is entitled to qualified immunity if he could have

27  ". . . reasonably but mistakenly believed that his . . . conduct did not violate the right."  Jackson v.

28  City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see also Saucier, 533 U.S. at 205.

1    The first factors in the qualified immunity analysis involve purely legal questions.

2    See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996).  The third inquiry involves a legal

3    determination based on a prior factual finding as to the reasonableness of the government

4    official's conduct.  See Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995).  The district court

5    has discretion to determine which of the Saucier factors to analyze first.  See Pearson v. Callahan,

6    555 U.S. 223, 236 (2009).  In resolving these issues, the court must view the evidence in the light

7    most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff.  See

8    Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

9    The Court finds Defendants are entitled to qualified immunity.  "Except in the rare

10   case of an 'obvious' instance of constitutional misconduct . . . Plaintiffs must 'identify a

11   case where an officer acting under similar circumstances as [defendants] was held to have

12   violated [plaintiff's constitutional rights].'"  Sharp v. Cty. of Orange, 871 F.3d 901, 911 (9th Cir.

13   2017) (emphasis in original) (quoting White v. Pauly, 137 S.Ct. at 552).

14   Plaintiff's claims against Defendants relate to the medical care provided to him

15   and the delay between his initial examination and subsequent treatments.  Defendant Kandel's

16   interaction with Plaintiff took place within the triage and treatment area.  As discussed above,

17   Kandel did not have the ability to prescribe medication to Plaintiff, order x-rays for Plaintiff, or to

18   send Plaintiff to the emergency room.  Kandel assessed Plaintiff and concluded that Plaintiff did

19   not need urgent, life-saving medical care.  Kandel relayed her findings to Win and provided

20   Plaintiff ice to reduce the swelling in his jaw.  As for Win, he never physically saw Plaintiff and

21   used the description provided to him by Kandel to reach his determinations.  Based on the

22   information that Kandel gleaned from her assessment of Plaintiff, Win did not believe Plaintiff

23   needed treatment from an outside facility.  Win prescribed ibuprofen to aid with pain

24   management, as well as scheduled an appointment for an x-ray of Plaintiff's jaw for the following

25   business day.  These actions are not "obvious" instances of constitutional misconduct. Plaintiff

26   must thus demonstrate legal precedent where an officer acting under similar circumstances as

27   defendants was held to have violated plaintiff's constitutional rights. See Sharp, 871 F.3d 911.

28   Plaintiff provides no such precedent in his opposition and has failed in this burden.

20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# V. CONCLUSION

Based on the foregoing, the undersigned recommends that Defendant's motion for summary judgment (ECF No. 43) be granted in full.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  December 4, 2020

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

21